**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE: APPLICATION OF ARIEL ADAN | : | |
| Petitioner, | : | **OPINION** |
| v. | : | Civil Action No. 04-5155 (WHW) |
| ELENA ESTER AVANS, | : | |
| Respondent. | : | |

**Walls, Senior District Judge**

This case concerns the petition of Ariel Adan, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 (1980) ("the Convention") for the return of his child, Arianna, to Argentina. The petition was granted on June 25, 2007. Respondent now moves this Court to reconsider its June 25, 2007 Order pursuant to Fed. R. Civ. P. 59(e). Respondent also seeks a stay of that Order, pending appellate review. Pursuant to Fed. R. Civ. P. 78, the Court decides this motion without oral argument. The motions are denied.

**FACTS AND PROCEDURAL HISTORY**

The facts and procedural history of this case are set forth in detail in this Court's June 25, 2007 Opinion ("June Opinion"), so only a brief version is recorded here. See In re Application of Ariel Adan, 2007 WL 1850910, Civ. No. 04-5155 (D.N.J. June 25, 2007). Adan filed an application with this Court, pursuant to the Convention, in October 2004. This Court held a

**NOT FOR PUBLICATION**

hearing on June 6 and 7, 2005, at which it heard testimony from Avans and Adan. On June 7, 2005, this Court issued an order granting Adan's petition for the return of the child and ordering Avans to return Arianna to Argentina immediately. Avans filed an appeal, and the Third Circuit vacated this Court's order and remanded for further proceedings. On April 11, 12, 16 and 17, 2007, the Court held an evidentiary hearing where it heard evidence on whether Adan had status to bring a petition under the Convention and on whether the grave harm exception to the Convention could be invoked.

On June 25, 2007, the Court issued an Opinion and Order holding that (1) Petitioner retained rights of custody and had status to file a petition under the Convention; and (2) Respondent did not meet her burden in establishing the applicability of the grave harm exception to the Convention. Specifically, the Court held that Respondent did not produce clear and convincing evidence, as required by the Convention, that Arianna was sexually abused by Adan or that the Argentine courts will be ineffective in protecting Arianna. June Opinion at 24, 27. Accordingly, the Court granted Petitioner Adan's petition and directed the parties to appear before it to discuss and finalize plans for the appropriate transport of Arianna to Buenos Aires.

On July 24, 2007, the parties appeared before the Court where Avans' new counsel expressed Respondent's intent to file a notice of appeal, a motion for reconsideration, and a motion to stay the Court's Order. The motions for reconsideration and for a stay were filed later that day and are the subject of this Opinion.

## I. MOTION FOR RECONSIDERATION

### 1. Standard

**NOT FOR PUBLICATION**

Under Fed. R. Civ. P. 59(e), a litigant may move to alter or amend a judgment within ten days of its entry. Similarly, L. Civ. R. 7.1(i) allows a party to seek reconsideration of "matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked." The Third Circuit has held that the "purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)) (internal quotations omitted).

Reconsideration motions may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised before the entry of judgment. P. Schoenfled Asset Mgmt. L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001); 11 Charles A. Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 2006). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." Gutierrez v. Ashcroft, 289 F.Supp.2d 555, 561 (D.N.J. 2003) (quoting G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)).

Such motions will only be granted where (1) an intervening change in the law has occurred; (2) new evidence not previously available has emerged; or (3) the need to correct a clear error of law or prevent a manifest injustice arises. North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," and only when "dispositive factual matters or controlling decisions of law" were brought to the court's

**NOT FOR PUBLICATION**

attention but not considered. Yurecko v. Port Auth. Trans-Hudson Corp., 279 F.Supp.2d 606, 608-09 (D.N.J. 2003); see NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

**2. Discussion**

Respondent moves for reconsideration on two grounds. First, Respondent submits that the Court committed clear error when it held that Respondent had not proved by clear and convincing evidence that the child had been sexually abused. Second, Respondent asks the Court to consider previously unavailable evidence, namely a recent conviction of Adan by the Superior Court of the State of New Jersey, Union County, for contempt of a restraining order. The Court considers each basis in turn.

a. Clear Error

Respondent argues that this Court committed clear error when it determined that Arianna had not been sexually abused without ordering an independent examination of Arianna to determine as much. Respondent argues that Danaipour v. McLarey, 286 F.3d 1 (1st Cir. 2002), stands for the proposition that a Court must take all necessary steps to determine whether a child was abused, including ordering an independent evaluation of a child where allegations of abuse have been made.

This Court does not read Dainapour to *require* a Court to *sua sponte* order a sexual abuse evaluation whenever allegations of sexual abuse are made. In Dainapour, the district court concluded that it needed a full independent sexual abuse evaluation to make a finding as to whether or not sexual abuse had occurred in that case. However, the district court declined to

**NOT FOR PUBLICATION**

order such an evaluation and deferred the issue of whether or not abuse had occurred to the Swedish courts. The First Circuit held that the Convention requires the district court to make a determination on the issue of sexual abuse. Id. at 16. The Circuit emphasized that the court "declined to gather the very information that if found was necessary to make a determination on the key issue." Id. at 19. The Circuit concluded that the "trial judge should have made a determination on the underlying question of whether sexual abuse occurred." Id.

Here, the Court made such a determination and held that Respondent had failed to prove by clear and convincing evidence that the child had been sexually abused. This Court carefully examined all evidence presented to it. Each party had a full and fair opportunity to present any and all relevant evidence, in accordance with the Federal Rules of Civil Procedure. Neither party asked this Court to order an independent examination. Respondent suggests that this Court "failed to meet [its] obligation under the Convention, and ignored United States public policy, by not taking the necessary steps to determine whether sexual abuse in fact occurred." Resp. Br. at 6. However, the Court is not required to *sua sponte* order an expert examination of the child. Rather, the statute makes clear that Respondent bears the burden of proving by clear and convincing evidence that the grave harm exception applies. 42 U.S.C. § 11603(e)(2)(A), (B) (stating that the parent opposing the child's return has the burden of establishing by clear and convincing evidence the applicability of one of the exceptions or affirmative defenses provided in Articles 12, 13, or 20 of the Convention). Respondent put Dr. Susan Borjas of Trinitas Hospital on the stand. Dr. Borjas testified that she was unable to make a determination as to whether or not abuse had occurred. Respondent could have, but chose not to, sought a further

psychological evaluation of the child or had additional experts testify as to whether or not abuse occurred. Respondent failed to meet her burden. Where neither party so much as requested a court-ordered independent evaluation of the child, it cannot be clear error for a district court not to *sua sponte* intervene and dictate the terms by which evidence is to be gathered and presented to the Court. This is not how our adversary systems works. The Court considered all evidence presented to it and determined that Respondent failed to prove by clear and convincing evidence, as required by the Convention, that the child had been sexually abused.

Furthermore, it bears repeating that even if a different fact finder were to weigh the facts differently and to reach a different conclusion regarding the alleged abuse, it would not change the overall outcome of the case. In determining whether the grave harm exception applies, the court must "take into account any ameliorative measures (by the parents and by the authorities of the state having jurisdiction over the question of custody) that can reduce whatever risk might otherwise be associated with a child's repatriation." In re Application of Ariel Adan, 437 F.3d at 395 (quoting Blondin, 189 F.3d at 248). Courts in the country from which the child is abducted are frequently as willing and able as the United States to protect children, Friedrich v. Friedrich, 78 F.3d 1060, 1068 (6th Cir. 1996), and district courts must consider the "range of remedies that allow *both* the return of the children to their home country *and* their protection from harm, pending a custody award." Blondin v. Dubois, 189 F.3d 240, 249 (2d Cir. 1999) (remanding the denial of a petition under the grave harm exception so that the district court could consider if a temporary third party placement would protect the child while allowing him to be returned to his habitual residence).

**NOT FOR PUBLICATION**

Here, aside from Respondent's generalized and unsupported allegations of corruption, there was no evidence to suggest that the Argentine court system is incapable of resolving a domestic custody abuse so as to protect the interests of the child. To the contrary, at Avans' request, a custody hearing was scheduled to take place in San Martin, Argentina in March 2004. A ninety-day restraining order was granted in the interim. However, Avans chose not to attend the custody hearing and instead fled to the United States with Arianna, without the consent of Adan. The custody case in Argentina is still pending, and a hearing has been scheduled for August 13, 2007 in front of Dr. Belgrano. Arianna is to be taken into the protective custody of the state pending a decision by the Court. There is no clear and convincing evidence that Argentina, a co-signator to the Convention, is incapable of resolving a child custody dispute and protecting Arianna.

b. Previously Unavailable Evidence

Petitioner puts forth a second grounds for reconsideration – the alleged recent conviction of Adan for contempt of court for violating a restraining order. The Court is unpersuaded that this is a sufficient basis for reconsideration of this matter. The petition for the return of Arianna to Argentina was heard in April, 2007. The Court heard testimony from the parties for four days. The parties had a full and fair opportunity to put on any and all evidence relating to the application of the Convention. The Court, in its role as fact finder, carefully considered the evidence presented and determined that Respondent had not met her burden of proving grave harm by clear and convincing evidence. Accordingly, it issued an Opinion and Order on June 25, 2007 to the parties. Now, weeks later, Respondent asks this Court to consider an event that

**NOT FOR PUBLICATION**

transpired *after* the hearing and order. Respondent alleges, without any supporting documentation, that a New Jersey Court has, nearly a month later, on July 20, 2007, convicted Petitioner of violating a restraining order. The Court has not been presented with any facts regarding the circumstances of the conviction. However, even if such documentation were available, the Court does not agree that a conviction for violating a restraining order is dispositive, or for that matter relevant, to its determination that Respondent failed to prove grave harm by clear and convincing evidence. The purpose of a motion for reconsideration is to allow a Court to consider evidence that would have been available to it at the time of its decision but had not then been discovered; the purpose is not to extend the length of time in which the parties may litigate a matter or allow parties to supplement the record with events that transpired after a full and fair hearing has occurred and a judgment has been rendered.

Respondent's motion for reconsideration is denied.

## II. MOTION FOR A STAY

### 1. Standard

Rule 62(c) of the Federal Rules of Civil Procedure states, in relevant part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or other as it considers proper for the security of the rights of the adverse party.

Fed. R. Civ. P. 62(c). In determining whether a stay is warranted, courts generally consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

**NOT FOR PUBLICATION**

issuance of the stay will be substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); see also Repub. of Phillipines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); Wright & Miller § 2904.

**2. Discussion**

The Court carefully weighs the equities involved to determine whether a stay is warranted in this case.

a. Likelihood of Success on the Merits

Respondent argues that she is likely to succeed on the merits of her appeal. According to Respondent, this Court committed two errors: (1) failing to consider the totality of the circumstances, including Adan's domestic abuse of Avans; and (2) not directing that the child remain in the custody of her mother pending a determination of the Argentine court of Petitioner's fitness. This Court disagrees.

Respondent inadvertently or intentionally misstates this Court's determination. To be clear, the Court never found that sexual abuse occurred. Rather, the Court reviewed the uncorroborated allegations made by Avans and stated, "considering the evidence both qualitatively and quantitatively, cumulatively and separately, and *examining the total circumstances of the relationship of the parents and child*, the Court does not find that such evidence proves by clear and convincing evidence that the child was being sexually abused by her father." June Opinion at 23 (emphasis added). Similarly, with respect to the alleged spousal abuse, the Court recognized that some abuse may have occurred, but did "not accept Avans'

**NOT FOR PUBLICATION**

allegations wholesale and [did] not find that the abuse was chronic and pervasive." Id. Rather, having listened to her on the stand and having evaluated her demeanor at both her earlier court appearance in June 2005 as well as her appearance in April 2007, the Court found that "Avans [had] exaggerated and embellished the abuse in order to prevail in court and shelter under the Convention's exception." Id.

With respect to the order directing that Arianna be sent back to Argentina, this Court complied with the directive of the Third Circuit. The Third Circuit indicated that if this Court concluded that the grave harm exception did not apply and that the child should be returned to Argentina, the court "must still carefully tailor its order to counter whatever risk of harm exists– including returning the child in the custody of the parent who removed the child." In re Application of Ariel Adan, 437 F.3d at 395. Respondent argues that it was error for the court not to require that the child remain in the custody of Avans throughout the custody proceedings in Argentina. Respondent further suggests that "this Court's Order does nothing to reduce the risk to Arianna–including that she may be placed in Petitioner's custody while Argentine proceedings are pending–other than receiving representations that the Argentine authorities will look after her." Pet. Br. at 9.

Petitioner's brief is pure hyperbole and fails to appreciate the measures this Court and the Argentine authorities are taking to protect the well being of Arianna. This Court ordered a hearing to work out the logistics of the child's return to Argentina. That hearing occurred on July 24, 2007. This Court made clear that Avans may accompany the child to Argentina if she wishes and that Petitioner is required to bear the cost of the flight. Petitioner's counsel informed the

Court that a plane ticket for a non-stop flight leaving JFK Airport on August 12, 2007 and arriving at the Buenos Aires Airport on August 13, 2007 has been purchased on Aerolineas Argentina, the national airline of Argentina. The custody hearing is scheduled to begin at 11:00 a.m. on that day, and Judge Belgrano has reserved ten days for the hearing. Petitioner's counsel also represented that a social worker from the Court of Judge Belgrano will take Arianna into protective custody. This is consistent with the letters to the Court from Judge Belgrano, indicating that the court would put together a team of a psychiatrist, psychologist, and social workers to evaluate the child and ensure her well being. As this Court stated in its June Opinion, no Court in this country would or could do more.

This Court concludes that Petitioner's chance of success on the merits is small.

b. Irreparable Injury

Respondent argues that she will be irreparably injured if a stay is not granted and Arianna is returned to Argentina. This Court is unpersuaded. There is no evidence that any party will be prejudiced by a custody determination made by an Argentine court after a full and fair hearing on the matter. It should be repeated that this hearing was sought and initiated by Avans. Such a hearing is presently scheduled on August 13, 2007 in front of Judge Belgrano in Buenos Aires. Avans may succeed on the merits. Adan may lose. This Court makes no forecast. However, an order returning Arianna is consistent with the intent of the Convention. Unless an exception to the Convention has been proven by clear and convincing evidence, which this Court has determined was not, wrongfully abducted children are to be returned the country of their habitual residence.

c. Injury to Other Parties Interested in the Proceeding

The other party interested in the proceeding, Petitioner Adan, will be injured by further delay in the resolution of the custody of Arianna. Adan filed this petition back in 2004 and has been waiting for three years to have the matter resolved. Currently, a hearing in the custody proceeding is scheduled to be conducted in Buenos Aires on August 13, 2007 in the courtroom of Judge Belgrano. Petitioner's counsel has also advised the Court that ten days have been set aside for this custody proceeding. A stay would further frustrate the resolution of a custody matter opened in Argentina in 2004.

d. Public Interest

In considering where the public interest lies, this Court is mindful that the public interest of this country and of other countries which are signators to the Convention is met when the purpose of the Convention is met. The Convention was adopted by the signatory nations "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Convention, Preamble; see also Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993). As the Sixth Circuit made clear in Friedrich, "a district court has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." Id. A determination of wrongful removal under the Convention "does not require an ad hoc determination or balancing of the equities." Id. Such action would be contrary to the primary purpose of the Convention, to "preserve the status quo and deter parents from crossing international boundaries in search of a more sympathetic court." Id. Custody

proceedings are well under way in Argentina, and a hearing is set for August 13, 2007. Accordingly, the Court concludes that the public interest is met by returning Arianna to Argentina and allowing the court system to resolve the custody dispute, as intended by the Senate when it ratified the treaty.

Balancing the four factors, the Court, in its discretion, determines that a stay of the June Order is not merited.

**CONCLUSION**

For the foregoing reasons, Respondents' motion for reconsideration and motion for a stay are denied.

s/William H. Walls
**William H. Walls, U.S.S.J.**